**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF ARIZONA, ex rel. Thomas
C. Horne, Attorney General;
ARIZONA DEPARTMENT OF LAW,
Civil Rights Division,
*Plaintiffs-Appellants*,

and

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
*Plaintiff*,

ALICE HANCOCK,
*Intervenor-Plaintiff*,

v.

THE GEO GROUP, INC., a Florida
corporation, DBA Arizona State
Prison-Florence West and Central
Arizona Correctional Facility,
*Defendants-Appellees*,

RICK MAULDIN, an individual,
*Defendant*.

No. 13-16081

D.C. No.
2:10-cv-01995-
SRB

STATE OF ARIZONA, ex rel. Thomas
C. Horne, Attorney General;
ARIZONA DEPARTMENT OF LAW,
Civil Rights Division,
                    *Plaintiffs*,

ALICE HANCOCK,
                    *Intervenor-Plaintiff*,

        and

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
                    *Plaintiff-Appellant*,

        v.

THE GEO GROUP, INC., a Florida
corporation, DBA Arizona State
Prison-Florence West and Central
Arizona Correctional Facility,
                    *Defendant-Appellee*.

RICK MAULDIN, an individual,
                    *Defendant*.

No. 13-16292

D.C. No.
2:10-cv-01995-
SRB

OPINION

Appeals from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
August 11, 2015—San Francisco, California

Filed March 14, 2016

Before:  Stephen Reinhardt, A. Wallace Tashima,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY[*]

### EEOC / Title VII

The panel vacated the district court's summary judgment, and remanded with instructions to reinstate the Equal Employment Opportunity Commission and the Arizona Civil Rights Division ("the Division")'s claims brought on behalf of aggrieved employees of Geo Group, Incorporated, alleging violations of Title VII of the Civil Rights Act of 1964 and the Arizona Civil Rights Act ("ACRA").

The panel held that the EEOC and the Division sufficiently conciliated its class claims against Geo in this lawsuit in light of *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015).  The panel assumed that Title VII and ACRA's exhaustion requirements applied in this case, and held that the EEOC and the Division could maintain their claims on behalf of aggrieved employees provided that the employee alleged at least one act of misconduct occurred within 300 days prior to the date the first aggrieved employee, Alice Hancock, filed a charge against Geo.  The panel also held that in an EEOC

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

class action an aggrieved employee was not required to file a new charge of discrimination with the EEOC if the claim was "like or reasonably related" to the initial charge. Finally, the panel held that aggrieved employee Sofia Hines presented material issues of fact as to her hostile work environment claim.

## COUNSEL

P. David Lopez, Lorraine C. Davis, Jennifer S. Goldstein, and Anne Noel Occhialino (argued), Equal Employment Opportunity Commission, Office of General Counsel, Washington, D.C., for Plaintiff-Appellant EEOC.

Thomas C. Horne, Attorney General of Arizona; Rose Daly-Rooney and Christian B. Carlsen (argued), Assistant Attorneys General, Civil Rights Division, Tucson, Arizona, for Plaintiffs-Appellants State of Arizona and Arizona Department of Law.

Philip L. Ross (argued), Littler Mendelson, P.C., San Francisco, California; R. Shawn Oller and Kristy L. Peters, Littler Mendelson, P.C., Phoenix, Arizona, for Defendant-Appellee The Geo Group.

**OPINION**

CALLAHAN, Circuit Judge:

Plaintiffs-Appellants the Arizona Civil Rights Division ("the Division") and the Equal Employment Opportunity Commission ("EEOC") (collectively "Plaintiffs") appeal the district court's summary judgment rulings against them and in favor of Defendant-Appellee Geo Group, Incorporated ("Geo"). A female corrections officer, Alice Hancock, filed a charge of discrimination with the Division against her employer, Geo, alleging that she had been subjected to discrimination, harassment, and retaliation in violation of state and federal employment laws. After an investigation, the Division and EEOC found reasonable cause to believe that Geo had violated the employment rights of the corrections officer and a class of female employees. Conciliation attempts failed, and the EEOC and the Division brought suit on behalf of a class of female employees alleging that Geo violated Title VII of the Civil Rights Act of 1964 and the Arizona Civil Rights Act ("ACRA").

The district court granted summary judgment in favor of Geo dismissing several employees whom neither the EEOC nor the Division had identified until after filing the complaint. The district court also dismissed several employees who had not alleged acts within 300 days of the Division's Reasonable Cause Determination. The district court dismissed the hostile work environment claim of another aggrieved employee, Sofia Hines, on the ground that the conduct she alleged was not sufficiently severe or pervasive.

This appeal raises four issues: (1) the scope of the requirement that the EEOC and the Division conciliate any

claims with an employer prior to bringing suit, (2) when Title VII's 300-day limitations period starts to run in an EEOC class action; (3) whether, in an EEOC class action, an aggrieved employee is required to file a new charge of discrimination for acts that occur after the Reasonable Cause Determination; and (4) whether aggrieved employee Sophia Hines has presented material issues of fact as to her hostile work environment claim.

We vacate the district court's order. We hold that the EEOC and the Division sufficiently conciliated its class claims against Geo in this lawsuit in light of *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015).[1] Assuming that Title VII and the ACRA's exhaustion requirements apply in this case, we hold that the EEOC and the Division may maintain their claims on behalf of aggrieved employees provided that the employee has alleged at least one act of misconduct that occurred within 300 days prior to the date the first aggrieved employee, Alice Hancock, filed her charge against Geo. We also hold that in an EEOC class action an aggrieved employee is not required to file a new charge of discrimination with the EEOC if her claim is already encompassed within the Reasonable Cause Determination or if the claim is "like or reasonably related" to the initial charge. Finally, we hold that aggrieved employee Sofia Hines has presented material issues of fact as to her hostile work environment claim.

# I

Alice Hancock was employed by Geo as a correctional officer at the Arizona State Prison, Florence West Facility.

---

[1] The district court did not have the benefit of *Mach Mining*, which was not decided until after this case was on appeal.

Geo is a corporation that employs over 13,000 employees and provides corrections and detention management, health and mental health services to federal, state, and local government agencies. Geo contracts with the Arizona Department of Corrections to maintain and operate two facilities: (1) the low-to-medium security return-to-custody and driving-under-the-influence units at Florence West and (2) the medium-security sex-offender unit at Central Arizona Correctional Facility ("CACF").

On June 5, 2009, Hancock filed a charge of discrimination with the Arizona Civil Rights Division and the EEOC.[2] Hancock alleged that while working with Sergeant Robert Kroen he grabbed her crotch and pinched her vagina. Hancock filed an incident report with Geo, but contends that Geo did not remedy the harassment. After Hancock complained about Kroen's conduct, three of her coworkers complained that Hancock had made an offensive comment. Geo placed Hancock on unpaid administrative leave pending an internal investigation, and later suspended her for 15 days without pay. Three months after Hancock filed her charge of discrimination, Geo terminated Hancock's employment.

The Division investigated the allegations in Hancock's charge.[3] It asked Geo for a position statement and served discovery on Geo asking for "similar complaints made by

---

[2] A "charge" is a written and verified statement that a person has engaged or is engaging in an unlawful employment practice. 29 C.F.R. §§ 1601.7, 1601.9, 1601.11; Ariz. Rev. Stat. § 41-1481(A).

[3] The Arizona Civil Rights Division has entered into a worksharing agreement with the EEOC, which states how the investigations of charges are divided. *See* 42 U.S.C. § 2000e-8(b); 29 C.F.R. § 1601.13.

others involving the same issues or individuals as involved in [Hancock's] complaint to the [Division]." Geo provided documentation regarding previous investigations of complaints of sexual harassment at its Florence West facility involving individuals other than Hancock. Based on Geo's responses, the Division identified five additional female correctional officers who either witnessed or complained of sexual harassment. The Division then subpoenaed and interviewed current and former Geo employees, who identified additional female employees as potential aggrieved employees.

On May 19, 2010, the Division concluded its investigation and issued a Reasonable Cause Determination substantiating Hancock's allegations of discrimination and harassment based on her sex and retaliation. The Division found that Kroen had sexually harassed her, Kroen and others created a hostile work environment, and that Geo retaliated against Hancock after she complained about Kroen. Additionally, the Division identified other incidents of misconduct by Kroen and other male supervisors "that created an offensive and hostile work environment based on gender that adversely affected Hancock and a class of female employees working at the facility." The Division identified several egregious acts allegedly committed by three male correctional officers against subordinate female officers. The alleged acts included that a male officer grabbed Hancock's breast; he made offensive comments and gestures including that he was "'fucking" a female correctional officer, told female officers that he wanted to "bend [them] over the desk" and "wanted to ram [them] from the back" while making humping gestures, and told female correctional officers to "suck his dick" while making gestures towards his penis. Another male officer allegedly "rubbed against a subordinate

female correctional officer when she bent over to replace a trash can liner," and "forcibly lifted her onto a table, shoved himself between her legs and tried to kiss her."

The Division also found reasonable cause to believe that Geo did not take reasonable steps to prevent and correct harassment in the workplace and subjected female officers to different terms and conditions of employment.   The Division's investigation suggested, among other things, that even after substantiating sexual harassment claims against two male correctional officers, Geo gave one officer a positive performance review and made the other officer an instructor for mandatory training that his victims would be required to attend.  Additionally the Division found that while Geo had a practice of transferring male supervisors accused of harassment to other units (which also employed female correctional officers), female correctional officers were assigned to less desirable positions after they complained.

Based on its investigation, the Division determined that "Hancock and the other similarly-situated aggrieved females were subjected to different terms and conditions of employment, including harassment and retaliation."   The Division concluded that there was reasonable cause to believe Geo had violated Arizona Revised Statutes prohibiting discrimination, harassment, and retaliation, "against Hancock and a class of female employees."   The EEOC adopted the Division's Reasonable Cause Determination in a separate letter to Geo.

## A. The EEOC and the Division's Conciliation Efforts with Geo

The EEOC and the Division invited Geo to conciliate the matter in their Reasonable Cause Determinations. Additionally, the EEOC and the Division conveyed a conciliation letter to Geo that outlined a proposal to settle Alice Hancock's charge of discrimination and the claims of other aggrieved employees of Geo.  The letter proposed damages for Ms. Hancock, a class fund for unidentified class members, and injunctive relief.  Plaintiffs and Geo also attended a joint conciliation session.  During the conciliation session, Geo made a counteroffer as to Hancock but did not make a counteroffer to the class demand.  Geo asked Plaintiffs to identify the unidentified class members but they declined to do so.  Geo also proposed a separate settlement with the EEOC and the Division, which they rejected. Ultimately the conciliation was unsuccessful.

## B. The EEOC and the Division's Civil Complaints

The EEOC and the Division filed civil complaints against Geo alleging that "Geo Group has engaged in unlawful employment practices at the Florence West and CACF Facilities" in violation of Title VII and the ACRA.  The complaints alleged that Hancock and similarly situated employees were subject to "different terms and conditions of employment, including, but not limited to, sex-based hostile work environment and sexual harassment," and "retaliation."[4]

---

[4] The Division filed its complaint in the Maricopa County Superior Court, and Geo removed the Arizona state action to federal court.  The EEOC filed its complaint in the District of Arizona.  The cases were consolidated in district court.

While litigation was pending, Plaintiffs sent letters entitled "Notice of Class Litigation" to 144 female correctional officers and 259 male officers encouraging the officers to contact them if they ever witnessed any sexual harassment or retaliation.  As a result of these letters, additional female Geo employees came forward to participate in the lawsuit.

## C.  The District Court's Summary Judgment Orders

The district court granted in part Geo's successive motions for partial summary judgment.  The district court first dismissed the claims of 15 women who had not been specifically identified during the course of the investigation or in the Reasonable Cause Determination.  The district court concluded that the EEOC and the Division were required to identify these women and attempt to conciliate their claims prior to bringing suit on their behalf.  The court reasoned that because "Plaintiffs did not identify the fifteen women at issue until after sending their Notices of Class Litigation," Plaintiffs had "wholly failed to satisfy [their] statutory pre-suit obligations" to conciliate their claims.  The district court stayed the claims of the five aggrieved employees who were discovered during the investigation into Hancock's allegations while the Plaintiffs and Geo attempted conciliation.

After conciliation failed for the remaining aggrieved employees, the district court granted Geo's partial summary judgment motion finding that Hancock and the other five remaining aggrieved employees' claims were untimely in part.  The court found that Title VII and the Arizona Civil Rights Act required that a party file a charge of discrimination within 300 days of the alleged discriminatory act.  The district court found that Hancock had timely filed

her charge with the EEOC and the Division on June 5, 2009, but that any discrete acts prior to August 9, 2008—300 days before Hancock's June 5, 2009, charge—were untimely. The court found, however, that any alleged misconduct that formed Hancock's hostile work environment claim would not be barred.

With respect to other aggrieved employees, the court noted that they were not necessarily required to file their own charge if their claims arose out of similar discriminatory treatment as Hancock. However, the district court found the operative date for other employees was not the date of Hancock's charge (June 5, 2009), but rather May 19, 2010, the date of the Division's Reasonable Cause Determination that placed Geo on notice that the Division was expanding its investigation to include a class of women. Thus, the district court found that any discrete acts alleged by the other aggrieved employees prior to July 23, 2009, 300 days preceding the Division's Reasonable Cause Determination, were untimely.

The district court also barred any discrete acts that arose after the date of the Reasonable Cause Determination, May 19, 2010, as those acts "were not investigated and, therefore, cannot be considered." The district court noted that the EEOC and the Division had failed to respond to Geo's argument that post-determination acts should be excluded. The court also found that aggrieved employees with claims arising after the Reasonable Cause Determination were required to file their own charges. Accordingly, the district court found that two aggrieved employees, Roach and Wilcox, had failed to allege any timely acts and granted summary judgment in Geo's favor.

Finally, the district court found that, regardless of whether Hines's claims were timely, the conduct that Hines alleged did not rise to the level of actionable hostile work environment.

Hancock settled with Geo prior to trial for an undisclosed amount, and the district court dismissed her claims. The final two remaining employees entered into a consent decree prior to trial. The consent decree preserved the EEOC and the Division's right to appeal the district court's summary judgment orders in an effort to pursue claims and remedies on behalf for the dismissed employees. The EEOC and the Division timely appealed.

## II

We review summary judgment de novo. *Szajer v. City of L.A.*, 632 F.3d 607, 610 (9th Cir. 2011). We focus on (1) the agencies' obligation to seek conciliation prior to filing suit on behalf of aggrieved employees, (2) when the 300-day period begins to run for employees who seek to join an agency class action, (3) whether, in an EEOC class action, an aggrieved employee is required to file a new charge of discrimination for acts that occur after the Reasonable Cause Determination, and (4) whether Sophia Hines has presented material issues of fact that precluded summary judgment against her.

## III

## A. The EEOC and the Division's pre-suit conciliation efforts are subject to limited judicial review

"Title VII of the Civil Rights Act of 1964, 78 Stat. 241, 42 U.S.C. § 2000e *et seq.*, sets out a detailed, multi-step

procedure through which the [EEOC] enforces the statute's prohibition on employment discrimination." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1649 (2015) (unanimous). "The process generally starts when 'a person claiming to be aggrieved' files a charge of an unlawful workplace practice with the EEOC." *Id.* (quoting 42 U.S.C. § 2000e-5(b)). "[T]he EEOC notifies the employer of the complaint and undertakes an investigation." *Id.* "If the Commission finds no 'reasonable cause' to think that the allegation has merit, it dismisses the charge and notifies the parties," and "the complainant may then pursue her own lawsuit if she chooses." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)).

"If, on the other hand, the Commission finds reasonable cause, it must first 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.'" *Id.* (quoting 42 U.S.C. § 2000e-5(b)). The statute leaves to the EEOC the ultimate decision whether to accept a settlement or instead to bring a lawsuit on its own behalf. *Id.* "So long as 'the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission' itself, the EEOC may sue the employer." *Id.* at 1649–50 (quoting 42 U.S.C. § 2000e-5(f)(1)). Thus, before suing an employer for discrimination, the EEOC must try to remedy unlawful workplace practices through informal methods of conciliation. The ACRA is "modeled after and is generally identical" to Title VII of the Civil Rights Act. *Ariz. Civil Rights Div. v. Hughes Air Corp.*, 678 P.2d 494, 497 (Ariz. Ct. App. 1983) (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 909–10 n.3 (Ariz. 1983)). It contains a similar condition requiring a conciliation attempt. Ariz. Rev. Stat. § 41-1481(B), (D).

After principal briefing in this case was completed, the U.S. Supreme Court granted certiorari in *Mach Mining* to determine whether and to what extent may a court enforce the EEOC's mandatory duty to conciliate discrimination claims before filing suit. 135 S. Ct. at 1651. The Court unanimously held that courts have jurisdiction to review whether the EEOC has satisfied the pre-suit conciliation requirement. *Id.* at 1652–53. However, the review of whether the EEOC has satisfied its pre-suit conciliation requirements is "limited." *Id.* at 1653.

> [T]he EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." [42 U.S.C. § 2000e-5(b).]  Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result.  And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice.  Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute.  At the same time, that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them.  And such review can occur consistent with the statute's non-disclosure provision, because a court looks only to whether the EEOC attempted to

> confer about a charge, and not to what happened (i.e., statements made or positions taken) during those discussions.

*Id.* at 1655–56.

Here, it is undisputed that the EEOC and the Division served Geo with a Reasonable Cause Determination detailing Hancock's allegations against Kroen and her complaint to Geo. Moreover, the Reasonable Cause Determination referred to a "class" of female employees who had also been subject to discrimination, harassment, and retaliation at the low-to-medium security return-to-custody and driving-under-the-influence unit at Florence West and the medium-security sex-offender unit, which was located at the CACF. Both agencies invited Geo to conciliate and all parties participated in a formal mediation session. The EEOC and the Division proposed a settlement including damages, injunctive relief, and a class fund for unnamed class members. Under the Supreme Court's guidance in *Mach Mining*, the agencies' actions clearly satisfied Title VII and the ACRA's conciliatory requirements.

Even if the EEOC and the Division had failed to conciliate prior to bringing suit, the appropriate remedy would be a stay of proceedings to permit an attempt at conciliation, not the dismissal of the aggrieved employees' claims.

> If, however, the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion

about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute.  Cf. *id.*, at —— – ——, 134 S.Ct., at 2367–2368. *Should the court find in favor of the employer, the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance.* See § 2000e-5(f)(1) (authorizing a stay of a Title VII action for that purpose).

*Id.* at 1656 (emphasis added).

Although the EEOC, like any party to litigation, may not negotiate in good faith, these concerns were addressed by a unanimous Supreme Court in *Mach Mining*.  The Court explained:

Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield.  So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief.  For a court to assess any of those choices—as Mach Mining urges and many courts have done, is not to enforce the law Congress wrote, but to impose extra procedural requirements.  Such judicial review extends too far.

*Id.* at 1654 (citation omitted).

Thus, the EEOC and the Division sufficiently conciliated its class claims against the employer, Geo, in this lawsuit under Title VII and the ACRA.  The district court's grant of summary judgment for failure to conciliate is vacated.

## B. Neither the EEOC nor the Division is required to conciliate on an individual basis prior to bringing a lawsuit on behalf of a class of aggrieved individuals

The district court was also concerned that the EEOC and the Division had used the discovery process to identify additional aggrieved employees, and accordingly deduced that they were required to identify and conciliate on behalf of all class members during the investigation period.  But we reject the district court's premise that the EEOC and the Division must identify and conciliate on behalf of each individual aggrieved employee during the investigation process prior to filing a lawsuit seeking recovery on behalf of a class.[5]  We hold that the EEOC and the Division satisfy their pre-suit conciliation requirements to bring a class action if they attempt to conciliate on behalf of an identified class of individuals prior to bringing suit.

Our determination is based in part on *Mach Mining*, which was a lawsuit brought by the EEOC on behalf of a class of women.  The Court held that in order to satisfy its pre-suit conciliation requirements, the EEOC must identify "what the employer has done and which employees (or what class of employees) have suffered as a result."  135 S. Ct. 1656.  The Supreme Court did not articulate any further

---

[5] The district court relied on *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012), but that circuit court decision was decided prior to *Mach Mining*.

requirement of individual conciliation prior to bringing a lawsuit on behalf of a class of individuals. Accordingly, we will not impose any additional pre-suit conciliation requirement.

If the EEOC and the Division were required to pursue individual conciliation on behalf of every aggrieved employee, they would be effectively barred from seeking relief on behalf of any unnamed class members they had yet to identify when they filed their suit. Civil litigants in private class actions may discover additional aggrieved employees who may wish to participate in the class. In light of the broad enforcement authority of the EEOC and the Division, it would be illogical to limit their ability to seek classwide relief to something narrower than the abilities of private litigants.[6]

Our determination that the EEOC and the Division satisfy their pre-suit conciliation requirements if they attempt to conciliate on behalf of a class of individuals prior to bringing suit is also consistent with the Supreme Court's broad interpretation of the EEOC's enforcement powers. The Court has held that "[e]very aspect of Title VII's conciliation

---

[6] We are not called upon to consider whether the EEOC could maintain a nationwide class action against an employer based on an investigation of less than a dozen employees or whether such an investigation would be reasonable. *See CRST Van Expedited*, 679 F.3d at 667–69, 673–74. Here, Hancock's initial charge prompted an investigation that revealed multiple potential victims of discrimination, harassment, and retaliation and harassers who had worked at Geo's Florence West and CACF facilities. Florence West and CACF are both owned and operated by Geo. They are neighboring facilities on the same road. Florence West houses the return-to-custody and driving-under-the-influence unit and CACF houses the medium-security sex-offender unit. The facilities' units were identified in the Reasonable Cause Determination as part of the class, and the EEOC and Division attempted conciliation of those class claims.

provision smacks of flexibility." *Id.* at 1654. Indeed, the EEOC "may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333–34 (1980). Additionally, we have noted, in a different posture, that the EEOC is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant in a class action. *EEOC v. Bruno's Restaurant*, 13 F.3d 285, 289 (9th Cir. 1993). In *Bruno's*, the defendant restaurant fired its pregnant waitresses. The EEOC investigated and found reasonable cause to believe that the defendant had illegally discriminated against them. *Id.* at 286–87. The defendant rejected the EEOC's efforts to settle and the EEOC brought suit. The district court dismissed the EEOC's action and awarded the defendant its attorney's fees based on the failure of the EEOC to conciliate a pattern and practice claim. *Id.* at 288. We vacated the award of attorney's fees holding that the EEOC could have reasonably believed that its efforts to conciliate were sufficient. Although we clarified that we were not deciding whether the EEOC in fact conciliated the claim, we acknowledged case law that had held "in a class action suit, the EEOC is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant." *Id.* at 289 (quoting *EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989)) (alteration omitted).

Our view is also consistent with the rulings of our sister circuits. *See, e.g.*, *Serrano v. Cintas Corp.*, 699 F.3d 884, 904 (6th Cir. 2012) (holding that EEOC satisfied its pre-suit requirement to attempt to conciliate class claims by "provid[ing] notice to Cintas that it was investigating class-wide instances of discrimination"); *Rhone-Poulenc, Inc.*, 876

F.2d at 17 (per curiam) (holding "the EEOC is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant" (internal quotation marks omitted)); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984) ("The record establishes that the EEOC sought to conciliate the class based claim with Keco."); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185–86 (4th Cir. 1981) (holding that EEOC's conciliation efforts regarding discriminatory practices at one branch office were sufficient to cover claims of similar discrimination at another branch).

We further note that the conciliation requirements do not change depending on whether the EEOC brings a claim under §2000e-5 (a § 706 claim) or §2000e-6 (a § 707 pattern-or-practice claim).    Title VII indicates that the pre-suit conciliation procedures for both sections are the same. *See* 42 U.S.C. § 2000e-6(e) ("All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 [§ 706] of this title."). In *Mach Mining*, the EEOC brought suit under both § 2000e-5(f)(1) [§ 706] and § 2000e-6 [§ 707] on behalf of a class of women. The Court held that the EEOC would fulfill its duty to attempt to conciliate by engaging the employer to remedy the alleged discriminatory practice including identifying "both what the employer has done and which employees (or what class of employees) have suffered as a result."    135 S. Ct. at 1656.    The Court did not differentiate between class suits brought under § 706 and § 707.  In any event, such differences would not apply here where *Mach Mining* and this case were both brought under § 706.

Thus, we vacate the district court's dismissal of EEOC and the Division's claims on behalf of aggrieved employees.

## IV

Title VII requires that "[a] charge shall be filed by or on behalf of the person aggrieved within three hundred [(300)] days after the alleged unlawful employment practice occurred . . . ."[7]    42 U.S.C. § 2000e-5(e)(1).    For hostile work environment claims of a continuing nature, the aggrieved employee must allege "at least one discrete act had occurred within the 300-day time frame." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2004) (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002)).    An individual's failure to file a charge with the agency within this time frame will usually operate to bar that person from bringing a lawsuit for failure to exhaust their administrative remedies. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94 (1982).    However, unnamed class members in a private class action need not exhaust administrative remedies. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 389 n.6 (1977) ("[F]ull relief under Title VII 'may be awarded on a class basis . . . without exhaustion of administrative procedures by the unnamed class members.'" (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975)); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 771 (1976) ("Th[e] justification [that unnamed class members had not filed administrative charges] for denying class-based relief in Title VII suits has been unanimously rejected by the courts of appeals, and Congress ratified that construction by the 1972 [Title VII] amendments."); *Albemarle Paper Co.*,

---

[7] In states that do not have a fair employment agency or have not agreed to receive EEOC charges on a deferral basis, the time for filing a charge of employment discrimination is 180 days of the alleged unlawful occurrence. 42 U.S.C. § 2000e-5(e)(1). The parties agree that the 300-day rule applies in Arizona, a deferral state.

422 U.S. at 414 ("[B]ackpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members.").

In addition, an aggrieved employee who fails to file a timely charge with the EEOC may still be able to pursue a claim under the piggyback or single-filing rule, in which the employee "piggyback[s]" onto the timely charge filed by another plaintiff for purposes of exhausting administrative remedies. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1136 (9th Cir. 2012) (citing, *inter alia*, *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759 (9th Cir. 1979)). The piggyback rule is a judicially created equitable tolling rule "based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency." *Id.* (citing *Bean*, 600 F.2d at 760 n.15).

The district court found that Hancock had timely filed a charge with the EEOC and the Division within 300 days of the alleged discriminatory practice. The court further found that Plaintiffs could assert claims on behalf of a class of individuals who had suffered an unlawful employment practice, but held that the filing period for those aggrieved employees should run from the date of the Reasonable Cause Determination and not Hancock's charge.[8]

---

[8] As an initial matter, we doubt that the EEOC is subject to the same strict timing requirements with respect to exhaustion of remedies in Title VII as a private party before bringing a class suit. "Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). However, it makes little sense for an agency to exhaust remedies before itself. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288 (2002) ("[T]he EEOC does not function simply as a vehicle for

We hold that the district court erred in requiring that aggrieved employees allege an act that occurred within the 300 days before the Reasonable Cause Determination. The proper starting date of the EEOC and Divison's class action is 300 days prior to Hancock's charge, not the Reasonable Cause Determination. This is evident from the plain language of Title VII that requires a "charge" be filed "within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). Nothing in the text refers to the agencies' Reasonable Cause Determination or indicates that a Reasonable Cause Determination be filed within 300 days of the alleged unlawful employment practice. Rather, the statute's timing requirement refers exclusively to the "charge."

Furthermore, we have previously held in a private class action that the proper "starting date of the class action [is] 300 days prior to the date [the charging party] filed his EEOC charge." *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1442 (9th Cir. 1984), *as modified*, 742 F.2d 520 (1984). As *Domingo* holds that the 300-day period starts from the date of the charge filed by the named plaintiff for all class members in a private class action, it follows that the limitations period for class actions brought by the EEOC should be no later.

Thus, the district court erred in limiting the time for which aggrieved employees may allege unlawful acts to 300

conducting litigation on behalf of private parties."); *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) ("[T]he Commission is not bound by the failure of the Sidley ex-partners to exhaust their remedies; the *Commission* had no duty to exhaust."). We need not address whether the EEOC is subject to the same strict timing requirements as private litigants because it is undisputed that the aggrieved employees here alleged acts that occurred within the 300 days prior to Hancock's charge.

days preceding the Reasonable Cause Determination in an EEOC class action.   The district court may have been concerned that Hancock's initial charge did not provide sufficient notice to Geo of the existence of class claims by other aggrieved female employees, particularly those employed at the CACF, a different facility than where Hancock worked.  *See Hipp v. Liberty Nat. Life Ins.*, 252 F.3d 1208, 1226 (11th Cir. 2001) (per curiam) ("A single charge cannot be expected to put the EEOC and employer on notice that general policies as applied to different individuals in different offices are being challenged indefinitely."). However, this concern fails to distinguish the time frame in which the employee is required to file their charge of discrimination (i.e., 300 days after the alleged unlawful employment practice occurred) from the EEOC's responsibility to notify the employer of the results of the EEOC's investigation.  Nothing in the text of the statute supports the district court's imputation of the employee's time limit into the EEOC's duty to notify the employer of the results of its investigation.

Moreover, we have held that a single charge of discrimination may be sufficient to put an employer on notice that additional people may be subject to the same unlawful employment practices. *Paige v. California*, 102 F.3d 1035, 1042–43 (9th Cir. 1996).  In *Paige*, we held that the plaintiff could maintain a class action alleging disparate impact in promotions even though he had not raised class claims in the administrative charge. *Id.*  We explained that "even if neither the EEOC nor the [state] charges on their face explicitly alleged class discrimination, it is plain that an EEOC investigation of class discrimination on the basis of race could reasonably be expected to grow out of the allegations in the charges."  *Id.* at 1042 (citing *Fellows v. Universal*

*Rests., Inc.*, 701 F.2d 447, 451 (9th Cir. 1983)).  Similarly, in *Lucky Stores, Inc. v. EEOC*, 714 F.2d 911, 913 (9th Cir. 1983), we held that the EEOC could bring claims on behalf of employees at Sacramento and San Leandro facilities where the employer had "adequate notice" notice that the EEOC was investigating those facilities' successor facility in Vacaville.[9]

It follows from *Domingo*, *Paige*, and *Lucky Stores*, that an employer may be on notice of classwide allegations of discrimination from a single charge.  Here, Hancock's charge alleged that she had been subject to discrimination, harassment, and retaliation.  Although Hancock's alleged incident with Kroen may have been isolated, she further elaborated that she complained about the harassment and Geo did nothing to remedy it.  Furthermore, she alleged that after she complained, Geo initiated an investigation against her based on false pretenses, and placed her on administrative leave.  Thus, the charge was not limited to an "isolated act" of discrimination by one individual against another.  *See Paige*, 102 F.3d at 1042–43, n.9 ("[T]he investigation that actually results or that can reasonably be expected to result from a charge filed by an individual is not limited by the literal terms of the charge.").  The EEOC and the Division

---

[9] We have also rejected the notion that an EEOC lawsuit on behalf of a class of employees must be confined to the allegations in the original charge. *EEOC v. Hearst Corp.*, 553 F.2d 579, 580–81 (9th Cir. 1976) (per curiam) (holding EEOC could maintain an action alleging discrimination against women and minority groups although the original charge alleged only discrimination against males); *EEOC v. Occidental Life Ins.*, 535 F.2d 533, 540–41 (9th Cir. 1976) (holding EEOC could maintain action alleging discrimination against male employees in the administration of the retirement system although original charge was filed by female alleging discrimination on the basis of her sex).

then brought an enforcement action against Geo on the *same* grounds articulated in Hancock's charge: discrimination, harassment, and retaliation against female correctional officers.[10]

Accordingly, the aggrieved employees who alleged acts of discrimination, harassment, or retaliation—the kind of discriminatory conduct alleged in Hancock's charge—within the 300 days preceding Hancock's initial charge have made timely claims.

## V

We also hold that in an EEOC class action, an aggrieved employee is not required to file a new charge of discrimination if her claim is already encompassed within the Reasonable Cause Determination or if the claim is "like or reasonably related" to the initial charge.

We first note that the EEOC failed to argue this point to the district court below. However, we have discretion to review an issue of law, that the district court addressed, and that would result in prejudice if not addressed. *See*

---

[10] The district court misconstrued *EEOC v. General Electric Co.*, 532 F.2d 359, 372 (4th Cir. 1976), and the cases relying on it. In *General Electric*, the Fourth Circuit held that a district court could fashion equitable relief, such as back pay from the date of the reasonable cause determination instead of the date that a charge had been filed. *Id.* However, *General Electric* is inapposite. At this stage, we need not consider the level of *redress* appropriate for alleged discriminatory misconduct that occurred in the period prior to Hancock's charge. We hold only that in an EEOC class action, the claims of individuals may not be *dismissed* if they have alleged an act of misconduct within the 300 days prior to the filing of the initial employee's charge.

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 n.8 (9th Cir. 2010). Whether an aggrieved employee is required to file a new charge of discrimination in an EEOC class action is an issue of law, that the district court addressed, and that otherwise could result in prejudice to those aggrieved employees if we did not discuss it.

We have held that an EEOC civil suit may allege any discrimination "stated in the charge itself or discovered in the course of a reasonable investigation of that charge, provided such additional discrimination was included in the EEOC 'reasonable cause' determination and was followed by compliance with the conciliation procedures of the Act." *EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1976). Similarly, in *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994), we held that the EEOC could assert an employee's discriminatory layoff claim as it was "like and reasonably related to" her charge which alleged discriminatory failure to recall and rehire. *See also Vasquez v. Cty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2004) (holding individual employee may assert unexhausted retaliation claim if the later claim is "reasonably related" to the allegations in the employee's timely filed charge). We "consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)).

The district court refused to consider any aggrieved employees' discrimination or retaliation that occurred after the Reasonable Cause Determination without analyzing whether the allegations were included in the Reasonable

Cause Determination, whether the allegations were "like or reasonably related to" Hancock's charge, or whether the allegations were consistent with Hancock's original theory of the case. Pursuant to *Hearst* and *Farmer Bros.*, the district court's outright exclusion of alleged discrimination and retaliation that occurred after the Reasonable Cause Determination was misguided.

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), does not compel a different result. *Morgan* held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and "the charge, therefore, must be filed within the . . . 300–day time period after the discrete discriminatory act occurred." *Id.* at 113. That is, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* Thus, *Morgan* might be construed to require that an employee who experiences a discrete act of discrimination after the initial charge must file an additional, separate charge. However, the plaintiff in *Morgan* was seeking to recover damages for discrete acts that had occurred more than 300 days *prior* to the date he filed his charge. *Id.* at 106. By contrast, the EEOC and the Division seek to recover damages on behalf of aggrieved employees who experience discrete acts of discrimination *after* the Reasonable Cause Determination. Additionally, *Morgan* was a private action and did not purport to address whether an aggrieved employee has to file a new charge of discrimination when a class action is filed by the EEOC.[11]

---

[11] Accordingly, because this case is an agency action brought by the EEOC and the Division, we need not weigh in on the existing circuit split as to whether an employee who experiences a discrete act of discrimination after the initial charge has been filed must file a new charge

We thus vacate the district court's per se exclusion of any discrimination and retaliation that occurred after the date of the Division's Reasonable Cause Determination, and remand to determine whether the aggrieved employees' claims are already encompassed within the Reasonable Cause Determination, or whether the claim is "like or reasonably related" to the initial charge.

**VI**

We vacate the district court's summary judgment dismissing the claim brought on behalf Sofia Hines and hold that she has presented material issues of fact as to whether she was subject to a hostile work environment. "An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109–10 (9th Cir. 2000) (quoting *Pavon v. Swift Trans. Co.*, 192 F.3d 902, 908 (9th Cir. 1999)). "'Conduct must be extreme to amount to a change in the terms and conditions of employment.' To be actionable under Title VII, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did

_____

in a private class action. *Compare Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) *and Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012), *with Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 302–03 (4th Cir. 2009); *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 n.9 (7th Cir. 2010).

perceive to be so.'" *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Courts determine whether an environment is sufficiently hostile or abusive by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Kortan*, 217 F.3d at 1110 (quoting *Faragher*, 524 U.S. at 787–88).

We have held that a plaintiff raises a material issue of fact as to her hostile work environment claim when she alleges that coworkers made unwanted sexual advances toward her; coworkers made frequent comments about her breasts; a coworker grabbed her breasts once; and her manager told her he wanted to take a trip to the mountains with her and commented on how "well built" she was. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 953–55 (9th Cir. 1999).

In our case, Hines contends Hilsden made unwanted physical contact with her by "spank[ing]" her butt in front of inmates and a cadet. Although Hilsden claimed that his touching was an accident, Hines disputes this fact. Hines also alleges that Hilsden was "always talking dirty, always trying to pick up somebody" including saying that "I have my own nuts," and would make gestures while talking dirty. Hines asserts that other officers harassed her when they bumped into her, used profanity in front of her, and told her "it's your bra" that set off the metal detecting scanner. While each of these incidents may not in itself be sufficient to support a hostile work environment claim, their cumulative effect is sufficient to raise material issues of fact as to whether the conduct was so severe or pervasive to alter the conditions of

the workplace.  We express no view on whether Hines was actually sexually harassed or harassed on the basis of her sex, but hold that viewing the facts in her favor, the district court erred in dismissing Hines's hostile work environment claim.[12]

The cases cited by Geo, *Kortan*, 217 F.3d at 1104, and *Surrell v. California Water Service Co*., 518 F.3d 1097 (9th Cir. 2008), are inapposite.  In *Kortan*, a majority of the panel held that there was no material issue of fact as to harassment where the plaintiff alleged that a supervisor referred "once or twice" to another female as a "castrating bitch," "Madonna," and a "regina," but plaintiff herself did not regard this as harassing, and the supervisor never directed a sexual insult at plaintiff.  217 F.3d at 1106–07, 1110–11.  *Surrell* held that there was no severe or pervasive harassment when the plaintiff's supervisor confronted her in front of a customer about failing to perform an aspect of her job.  *Surrell*, 518 F.3d at 1108–09.  Neither *Kortan* nor *Surrell*, unlike the case before us, contained allegations of physical touching of the plaintiff and repeated comments and gestures directed to her.

\*      \*      \*

---

[12] The district court also erred insofar as it required that Hines's harassment claim be sexual in nature.  While sexual harassment must be sexual in nature, "offensive conduct that is not facially sex-specific nonetheless may violate Title VII if there is sufficient circumstantial evidence of qualitative and quantitative differences in the harassment suffered by female and male employees."  *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 842 (9th Cir. 2005); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.").  Here, the operative complaints allege both "sex-based hostile work environment and sexual harassment."

Congress and the Arizona legislature have imbued the EEOC and the Division with the responsibility to eliminate unlawful workplace discrimination. *See* 42 U.S.C. § 2000e-5(a); Ariz. Rev. Stat. § 41-1402. In carrying out this responsibility, the EEOC and the Division were required to attempt conciliation with Geo prior to filing their class suit seeking damages before bringing suit. They did so here by describing how a class of female prison guards were subject to discrimination, harassment, and retaliation, and by sending a conciliation letter to Geo and attending a full day mediation session. *See Mach Mining*, 135 S. Ct. at 1656. We further hold that in this lawsuit brought by the EEOC and the Division on behalf of a class of employees, the starting date for the class action is 300 days before the filing date of Hancock's charge. We vacate the district court's per se exclusion of discrete acts that occurred after the Reasonable Cause Determination. Finally, we hold that Sophia Hines has presented material issues of fact as to her hostile work environment claim, and accordingly, the district court's grant of summary judgment against her is vacated.

Summary judgment is **VACATED** and **REMANDED** to the district court with instructions to reinstate the EEOC and Division's dismissed claims brought on behalf of aggrieved employees consistent with this opinion.

Costs are awarded to Plaintiffs-Appellants.