Anthony C. JOINER, Plaintiff,

v.

WAL–MART STORES, INC.; and Sam's Club, A Division of Wal–Mart Stores, Inc., Defendants.

No. 1:99CV34–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 25, 2000.

C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, Marion, NC, for Anthony C. Joiner, plaintiff.

James W. Williams, Roberts & Stevens, P.A., Asheville, NC, Whitney M. Head, Bentonville, AR, for Wal–Mart Stores, Inc., defendant.

James W. Williams, Whitney M. Head, (See above), for Sam's Club, A Division of Wal–Mart Stores, Inc., defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court on defendants' Motion for Summary Judgment. Having considered defendants' motion and reviewed the pleadings, the court enters the following findings and conclusions.

## FINDINGS AND CONCLUSIONS

### I. Jurisdiction

This matter arises under Title VII of the Civil Rights Act of 1964, as amended—42, United States Code, Sections 2000e, *et seq.* Plaintiff was employed by Wal–Mart and worked at a Sam's Club from August 7, 1996, through September 16, 1997. It is his contention that he was sexually harassed by coworkers and, thereafter, was discharged from his employment in retaliation for his complaints. He timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Upon finding probable cause, the EEOC invited defendants to participate in dispute conciliation, which they refused. A right-to-sue letter was then issued, and plaintiff timely filed this civil action. This court has jurisdiction over plaintiff's claims. 28 U.S.C. § 1343; 42 U.S.C. § 2000e(5)(f)(3).

In addition to claims made pursuant to the laws of the United States, plaintiff has claimed violation of North Carolina's express public policy against sexual harassment in the workplace. This court's jurisdiction over that claim is pursuant to statutory supplemental jurisdiction, which provides that a federal court's original jurisdiction extends to non-federal claims when the federal question is substantial and the claims asserted could be brought in one proceeding. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court found, as follows:

> [If] considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

Inasmuch as it appears that plaintiff's state-law claim arises from the same transactions or occurrences upon which his federal claim is based, the issues are properly joined in this action.

### II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of

defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

### III. Factual Background

The court incorporates herein the factual statements contained in the briefs of the plaintiff and the defendants. To summarize, plaintiff worked at Sam's Warehouse in Asheville, North Carolina. While employed there, he claims, he was subjected to unwanted sexual advances by several female coworkers. He further contends that when he finally complained to management, they did not take his allegations seriously and ridiculed his complaint. Plaintiff admits that after he complained, the sexual harassment stopped, but he does not attribute that to any remedial action by defendants. Instead, he claims that the alleged harassment stopped because the women he accused were angry at him for complaining. He further contends that the charges of sexual harassment leveled against him by other women were not true and were made in retaliation for his complaints six months earlier. It is defendants' contention that they responded to plaintiff's charge by taking effective remedial steps and that his termination was the result of his own sexual misconduct towards other women in the workplace. Defendants have moved for summary judgment.

### IV. Higher Standard in Reverse Discrimination

As a preliminary matter, defendants contend that plaintiff, as a member of the majority class of males,[1] faces an initially higher burden of proof. Several district courts within the Fourth Circuit have imposed just such a standard. *See Settle v. Baltimore County*, 34 F.Supp.2d 969 (D.Md.1999); *Green v. Clarendon Co. School Dist. Three*, 923 F.Supp. 829 (D.S.C.1996); and *Gilbert v. Penn–Wheeling Closure Corp.*, 917 F.Supp. 1119, 1125 (N.D.W.Va.1996).

The Court of Appeals for the Fourth Circuit has yet to determine whether a heightened standard would apply to a member of the majority under Title VII. In *Lucas v. Dole*, 835 F.2d 532 (4th Cir.1987), the appellate court found it unnecessary to reach the issue:

> The present case also involves "reverse discrimination;" a member of the white majority is alleging racial discrimination. The Supreme Court has held that Title VII protects whites as well as minorities. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Although the D.C. Circuit has imposed a higher *prima facie* burden on majority plaintiffs, we expressly decline to decide at this time whether a higher burden applies. The similarity of the burden imposed under *Holmes* [*infra*] and that imposed by the D.C. Circuit in reverse discrimination cases makes it unnecessary to reach this issue in this case.

*Id.*, at 533–34. Clearly, if such a burden were imposed, review of the record reveals no evidence that defendants are among the unusual group of employers that discriminate against the majority. Further, there is no evidence that, but for his gender, plaintiff would not have been terminated.[2]

---

1. Inasmuch as men are actually the minority at 49 percent, this is a legal fiction based upon a historical preference.

2. The court has made such findings for the limited purpose of aiding further review. Such a heightened pleading and proof standard would be antithetical to a number of decisions which tend to discourage incorpo-

ration of stereotypes into the law: "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group." *Castaneda v. Partida*, 430 U.S. 482, 499, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). In *Leatherman v. Tarrant County Nar-*

## V. Establishing Prima Facie Claims Under Title VII

### A. Disparate Treatment

It is plaintiff's contention that women who complained about sexual harassment received more favorable results based on their gender. Plaintiff asserts a reverse disparate treatment claim under Title VII.

 A plaintiff can establish a *prima facie* case of disparate treatment by direct or indirect evidence of discrimination or under the *McDonnell Douglas* scheme. *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986). To establish a *prima facie* case under *McDonnell Douglas* in the context of disparate discipline, a plaintiff must show the following:

(1) he is member of a protected class;

(2) prohibited conduct in which he allegedly engaged was comparable in seriousness to misconduct of employees outside the protected class; and

(3) disciplinary measures enforced against him were more severe than those enforced against other employees.

*Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); and *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 510 (4th Cir.1993).

### 1. Membership in a Protected Class

 If this court were to apply the higher standard discussed above, inquiry would end here. The court, finds, however, that while Title VII was specifically implemented to end unlawful discrimination against traditional targets of discrimination in the workplace, such as women and racial minorities, it has grown to protect men as well. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (Title VII's prohibition of discrimination "because of ... sex" protects men as well as women). Inasmuch as workplace discrimination is no less unlawful when it is aimed at men as opposed to women, the court finds that plaintiff has satisfied the first element.

### 2. Prohibited Conduct

 The next element requires proof of prohibited conduct in which plaintiff allegedly engaged that was comparable in seriousness to misconduct of employees outside the protected class. In this case, plaintiff has presented some evidence that he was subjected to unwanted propositions and hugs and kisses from female coworkers. *See* Plaintiff's Deposition, at 75–76. The complaining women, however, alleged to management that plaintiff subjected them to what the women perceived to be physical assaults, including wrapping one complainant's neck with shrinkwrap and pulling her into him, sexual rubbing, lifting, and unbuckling his pants in a sexually offensive manner. *See* Exhibits D–1, D–2, D3, F–1, F–2, and F–3. When confronted, the group of women plaintiff accused admitted their wrongful conduct. When plaintiff was confronted, he denied the allegations against him. The court finds that plaintiff has not satisfied the second element.

### 3. Different Treatment

 Even if plaintiff could somehow show that his complaints and those of the complaining women were substantially similar, he has not shown that disciplinary measures enforced against him were more severe than those enforced against other employees. Foremost, plaintiff has not shown any other instance where defendants treated the complaints of men differently than those voiced by women.

*cotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected a "heightened pleading standard" in civil rights cases alleging municipal liability under 42, United States Code, Section 1983. A "heightened pleading standard" appears to be reserved for situations such as pleading fraud or protection of constitutional protections, such as qualified immunity. *Dunbar Corp. v. Lindsey,* 905 F.2d 754, 763 (4th Cir.1990).

The court concludes, therefore, that plaintiff has not presented evidence upon which a reasonable fact finder could find in his favor on each element of a *prima facie* case of disparate treatment. Summary judgment, therefore, will be granted in favor of defendants on this claim.

## B. Hostile Work Environment Claim

### 1. Introduction

Title VII has created two recognized causes of action—*quid-pro-quo* harassment and hostile work environment. The respective burdens in the two types of claims of sexual harassment may be met with direct evidence, introduction of statements, or circumstantial evidence which is relevant and probative. *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). As discussed *supra*, plaintiff's burden is to show that there is a genuine issue of material fact warranting trial.

In this case, plaintiff contends that he was subjected to a hostile work environment. In order to maintain such a claim, it is required that the following four specific elements be shown:

(1) that the conduct was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer.

*Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir.1989), *vacated in part*, 1989 U.S.App. LEXIS 13074 (4th Cir.1989), *vacated* 900 F.2d 27 (4th Cir.1990). The "notice" requirement can be rebutted by the employer directly or through evidence which shows the employer took prompt remedial action. *Id.* "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996). Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of his or her employment. *Id.* at 753 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

In order for plaintiff's case to survive summary judgment, he carries a heavy burden of presenting evidence upon which a reasonable fact finder could find in his favor on each of the elements. Each element will be discussed below in the context of a *prima facie* case.

### 2. Proof as to Each Essential Element

#### a. Unwelcome Conduct

The court has considered all the evidentiary material submitted by plaintiff and has read evidentiary material submitted by defendants in a light most favorable to plaintiff. In his deposition, plaintiff has presented evidence that while working at Sam's Warehouse, he was subjected to unwelcome conduct by others, consisting of sexual propositions, touchings, kisses, hugs, and gifts from female coworkers. This satisfied his burden on the first element.

#### b. Based on Sex

Plaintiff's averments in his deposition tend to indicate that the unwelcome conduct was based on his gender. This satisfies the second element.

#### c. Pervasiveness

As the Court of Appeals for the Fourth Circuit has held: "Whether . . . harassment was sufficiently severe or pervasive is quintessentially a question of fact." *Paroline v. Unisys Corp., supra*, at 105. This court cannot find "pervasive" the series of propositions, hugs, and isolated kisses on the cheek that plaintiff testifies to in his deposition. Plaintiff has not shown that the work environment was so

sexually charged, or that such conduct was so diffused throughout his workplace, as to meaningfully alter the terms of his employment. The Supreme Court recently held that Title VII does not "reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and the opposite sex." *Oncale v. Sundowner Offshore Services,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). The standard is an objective one, *id.,* and while plaintiff may truly believe his work environment was pervaded by unwanted sexual attention, there is not sufficient evidence for an objectively reasonable person to so find. Most telling is plaintiff's testimony concerning what he found most offensive:

Q. Just give me—grab me and give me a big hug. And I remember the last time she did it, she kissed me right on the cheek. And I said that's it. That's what made me go out the other way. I was dealing with the hugs even though I didn't like them. But the first time she kissed me on the cheek with a hug, that was it.

Q. At any of the times that week where she would call you over to say good-bye and hug you, did you tell her you didn't want her to hug you?

A. No.

Plaintiff's Depo., at 75–76. The Court in *Oncale* specifically held that intersexual flirting does not amount to the imposition of discriminatory conditions of employment. *Id.* Here, the court can find no evidence that would somehow convert the flirtations of which plaintiff complains into anything more than ordinary socializing. Plaintiff's claims of unwelcome kisses on the cheek and hugs do little to further his claim, inasmuch as he admits that he did not say "no" or in any other way indicate that such demonstrations were not welcome. It simply is not illegal to flirt in the workplace, to hug in the workplace, or even kiss in the workplace. These are very ordinary things that people do and are not *per se* intimidating, hostile, humili-

ating, or offensive. It is only when such conduct is both unwelcome and pervasive that they become unlawful. "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Hopkins v. Baltimore Gas & Elec. Co., supra.* Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of that person's employment. *Id.* at 753 (citing *Harris v. Forklift Sys., Inc., supra,* and *Meritor Sav. Bank, FSB v. Vinson, supra* ). The court finds that plaintiff has not satisfied his burden on this element.

**d. Basis for Imputing Liability to the Corporate Defendants**

Even if the court were to assume that plaintiff met his burden as to the first three elements, liability cannot attach to defendants under Title VII unless plaintiff also presents evidence that defendants, upon learning of plaintiff's work environment, took *no* effective action to correct the situation. *Spicer v. Commonwealth of Virginia,* 66 F.3d 705, 710 (4th Cir.1995).

It is plaintiff's contention that when he reported the alleged harassment, management took no *remedial* steps and, instead, treated his complaint as a joke. Indeed, plaintiff alleges that he caught management in the act of ridiculing his complaint. Plaintiff admits, however, that after he complained, the harassment stopped, "but not because of any prompt remedial action taken by defendants, but rather because the women, when they learned that plaintiff had complained about them, became angry at plaintiff. . . ." Plaintiff's Brief, at 11. This conclusion as to the subjective motivation of the alleged perpetrators is pure speculation, as plaintiff has not pointed to any evidence supporting such claim.

The only evidentiary material plaintiff has submitted in support of such impression is the affidavit of coworker Teresa Bailey, who in paragraph 7 relates the following:

My impression, based on their comments after the managers talked to them about Mr. Joiner's complaints, is that they retaliated against Mr. Joiner when he rebuffed their advances and complained to management about them.

Bailey Aff., at ¶ 7. This court must find that Ms. Bailey's "impressions" are not evidence that would support plaintiff's claims or, for that matter, be admissible if this matter were to be tried. Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 241–42 (4th Cir.1982). Speculative assertions are not enough to withstand summary judgment, *Goldberg v. B. Green and Co.,* 836 F.2d 845, 848 (4th Cir.1988); and conclusory statements (like those contained in the response) will not satisfy plaintiff's burden in responding to a motion for summary judgment, *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211 (4th Cir.1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985).

■ Defendants have submitted evidence to the contrary, including averments that they conducted an investigation, interviewed each of the accused, determined that the incidents were consensual, but counseled the accused not to engage in anything other than professional conduct. *See* Exhibit D. Defendants contend that such remedial efforts unequivocally resulted in cessation of the alleged harassment, a fact which plaintiff concedes at page 93 of his deposition. Clearly, "liability must cease" when an employer's remedial response results in the cessation of alleged harassment. *Spicer v. Commonwealth of Virginia, supra,* at 711.

### C. Retaliation Claim

■ A plaintiff may establish a case of retaliation for reporting sexual harassment through use of a *"McDonnell Douglas* scheme." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991). To make out a *prima facie* case of retaliation, plaintiff would have to show the following:

(1) he engaged in protected activity;

(2) he was subjected to an adverse employment action; and

(3) a causal relationship exists between the first two elements.

If a plaintiff can establish such a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Defendants concede, as will the court, that plaintiff has submitted evidence that would support the first two elements. Plaintiff, however, has presented no evidence of any causal link between the first two elements that would satisfy the third element of a *prima facie* case.

■ In this case, the first two elements are separated by six months. Close temporal proximity between the first elements has been held to satisfy the third element. *See Carter v. Ball,* 33 F.3d 450 (4th Cir.1994) (five months); *Williams v. Cerberonics, Inc.,* 871 F.2d 452 (4th Cir. 1989) (four months). Likewise, distant temporal proximity may indicate no retaliatory motivation. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739 (11th Cir. 1996). This court cannot find that the period of six months between plaintiff's allegations and his termination would amount to close temporal proximity contemplated by the appellate court in *Carter.* This lack of temporal proximity is especially lacking where, as here, a plaintiff received favorable evaluations and *promotions* between the time when he complained and when he was fired. The court has also searched the record for any other-than-temporal causal connection between plaintiff's complaints and his termination. None has been found.

Finding that plaintiff has failed to establish a causal connection between the first two elements, the court determines that

defendants are entitled to the relief they seek.

## VI. Legitimate, Nondiscriminatory Reason for Termination

■ As to each of the three claims discussed above, if plaintiff could have established a *prima facie* case of disparate treatment, hostile work environment, or retaliation, an inference would then have arisen that unlawful discrimination was the reason for the employment action. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then would shift to the employer to "articulate some legitimate, nondiscriminatory reason" for its action. *Id.*

■ If defendants could have established such a reason, the burden would have shifted back to plaintiff to show that the stated reason was a mere pretext for a gender-based decision. *Id.*, at 804, 93 S.Ct. 1817. The ultimate burden of persuasion remains on the plaintiff to prove intentional discrimination. *Texas Department of Community Affairs v. Burdine*, *supra*, at 253, 101 S.Ct. 1089.

■ In this case, defendants have presented evidence that plaintiff was terminated for sexually harassing several women in the workplace six months after he lodged charges of discrimination against other women. Defendants have satisfied their burden, inasmuch as termination of an employee for conduct violative of Title VII is a legitimate reason for termination of an employee.

■ The burden now shifts back to plaintiff to present evidence that would rebut this showing by defendants. To do so, plaintiff must show that the legitimate reason provided was pretext for discrimination. Plaintiff has submitted the affidavit of coworker Teresa Bailey which, as discussed above, is speculative, at best. It further misses the point. It is not the motivation of these accusing women that is relevant, but the motivation of defendants. Even if plaintiff could possibly show that the accusing women somehow trumped up the charges, it would have no bearing unless it could be shown that they were acting in concert with the employer. If an employer is duped into believing baseless charges, its decision to terminate an employee on such grounds remains a legitimate, nondiscriminatory reason. Plaintiff has not shown, and apparently cannot show, that defendants' given reason for plaintiff's termination was pretextual. Again, defendants are entitled to the relief they seek.

## VII. Conclusion

The court has considered the well-reasoned briefs submitted by respective counsel and all the evidence tendered. Without doubt, men are entitled to equal protection under Title VII from workplace discrimination, and this court would be hesitant to impose a higher pleading or proof standard under Title VII simply because they are considered to be the majority. While plaintiff clearly believed he was subjected to sexual misconduct, the standards under Title VII are, even without the enhancement suggested by defendants, both exacting and rigid, which reflects Congress's intent that workplace intervention by the federal courts be the exception rather than the rule.

Finding that plaintiff cannot satisfy those exacting burdens and that defendants are entitled to the relief they seek, defendants' Motion for Summary Judgment will be allowed for the reasons discussed herein. Finding that plaintiff's state-law claims for workplace discrimination are co-extensive with the federal claims discussed above, summary judgment will be granted in defendants' favor on those claims also. A Judgment reflecting this decision is entered simultaneously herewith.

This Memorandum of Decision is entered in response to defendants' Motion for Summary Judgment (# 8).