NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CRAIG BENNETT, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> C. R. BARD, INC., a foreign corporation; BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, <br><br> Defendants - Appellees. | No. 24-2471 <br><br> D.C. No. 5:23-cv-00369-MWF-MAA <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted January 14, 2025
Pasadena, California

Before: GOULD and BENNETT, Circuit Judges, and EZRA, District Judge.[**]

Plaintiff Craig Bennett appeals a summary judgment in favor of Defendants

C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") in this

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

product liability dispute. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *see Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017), we reverse and remand. This dispute relates to an inferior vena cava ("IVC") Filter, a medical device designed and sold by Bard. As the parties are familiar with the facts, we do not recount them here.

Summary judgment is proper where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law. *Tzung v. State Farm Fire and Cas. Co.,* 873 F.2d 1338 (9th Cir. 1989).

Bennett argues on appeal that the district court erred in determining that his claim was barred by the statute of limitations because he should have, and did, discover his cause of action before March 3, 2021.

Although the general rule provides that the statute of limitations begins to run "when the cause of action is complete with all of its elements," *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397 (1999), under California's discovery rule a cause of action does not accrue "until the plaintiff discovers, *or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807

(2005) (emphasis added). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.*

The discovery rule does not trigger accrual of a cause of action unless the plaintiff has some reason to suspect *wrongdoing;* that is, when a plaintiff, through reasonably diligent investigation, discovers only that he has been injured but not that the injury may have a wrongful cause, then the clock has not yet begun to run. *See Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307–08 (9th Cir. 1992), *as amended on denial of reh'g* (Apr. 14, 1992) (holding that the facts supported a reasonable inference that the plaintiff could have believed it was injured as a result of "innocent mistakes" rather than fraud, and this inference rendered summary judgment inappropriate).

The district court found that "any reasonable jury would conclude that Plaintiff was on inquiry notice" that a potential defect of the Filter caused his injury because: (1) Bennett saw a TV program in 2015 indicating the Filter "may be associated with complications of fracture, migration, tilt and perforation"; and (2) Bennett then retained counsel to investigate and discuss with his physicians whether failed attempts to surgically remove the Filter were due to a design defect. Further, the district court found that Bennett's medical record "suggests that, by 2020 at the latest, he and his doctors were aware that the Filter was causing various medical problems." The district court cited to Bennett's treatment for varicose

veins in October 2020 and his doctor's belief in November 2020 that "his symptoms were indicative of possible IVC stenosis" as supporting the conclusion that "Plaintiff suspected, well before March 3, 2021, that the Filter and its potential defects were the cause of his injuries."

However, viewing the facts in the light most favorable to Bennett, the non-moving party, the record supports the reasonable inference that Bennett could have believed his pre-March 2021 symptoms were the result of potential complications that were *not caused by a design defect*. In addition to a warning about the potential for movement, migration, tilt, fracture, and perforation, the Filter's Instructions for Use warned about caval thrombosis, stenosis at the implant site, vessel injury, back or abdominal pain, and thrombophlebitis, among other things. Thus, a reasonable jury could conclude that the presence of several symptoms prior to March 2021 that Bard had warned were "potential complications" of using the Filter does not necessarily indicate that the Filter had malfunctioned due to a design defect.

Moreover, the district court drew the adverse inference that Bennett was on inquiry notice after viewing a TV program indicating Bard's IVC Filters may be associated with "complications of fracture, migration, tilt, and perforation through the vena cava into adjacent organs." After viewing the program in 2015, Bennett retained counsel to "investigate whether there was any evidence that [his] IVC

24-2471

Filter had malfunctioned and that's why it could not be removed." After providing his lawyers with his medical records, Bennett was informed his records did not reveal any evidence of malfunction in the form of fracture, migration, tilt, or perforation of the Filter.

At the summary judgment stage, courts must draw all reasonable inferences in favor of the non-moving party. *Tzung*, 873 F.2d at 1339–40. Accordingly, it was improper for the district court to infer that after viewing the TV program and contacting a lawyer in 2015, Bennett had inquiry notice that a potential defect of the Filter caused him injury in the form of two failed surgical removal attempts of the device. The district court further inferred that Bennett was on notice of a failure due to a design defect simply because he sought legal advice after viewing a TV program indicating there was a *possibility* the Filter had failed.

To support its conclusion, the district court cited *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1108–09 (C.D. Cal. 2013), *aff'd sub nom. Hendrix v. Novartis Pharms. Corp.*, 647 F. App'x 749 (9th Cir. 2016). However, in that case, the plaintiff's doctors had indicated in his medical records that his osteonecrosis of the jaw had potentially been caused by the prescription drug at the center of the plaintiff's product liability claim, and the plaintiff had seen a commercial suggesting there was a link between his diagnosis and the drug. *Id.* By contrast, here, Bennett's medical records indicate no suspicion by his doctors prior to March

2021 that his Filter ever caused the injuries that were the subject of the 2015 TV program: fracture, migration, tilt, or perforation.  Therefore, it was improper for the district court to infer that Bennett had inquiry notice that his Filter had malfunctioned due to a design defect on this basis.

In light of the record in this case, whether Bennett had inquiry notice that the Filter had malfunctioned due to a design defect presents a genuine dispute of material fact.  Accordingly, we reverse the district court's grant of summary judgment to Bard and remand for further proceedings.[1]

**REVERSED AND REMANDED.**

---

[1] Because we have found that reversal is warranted, we do not address Bennett's alternative contentions that the district court erred in granting summary judgment on other grounds.