Dissent by Judge IKUTA
OPINION
HURWITZ, Circuit Judge:
Cynthia Fuller was raped by an Idaho Department of Corrections (“IDOC”) coworker. Before that sexual assault, the IDOC had placed the co-worker, whose *1158 conduct had been the subject of several complaints by female employees, on administrative leave because he was under criminal investigation for another rape. Shortly before Fuller was raped, a supervisor told employees (including Fuller) that the agency “looked forward” to the co-worker’s prompt return from leave. One day after Fuller reported the rape, a supervisor told her that the rapist “had a history of this kind of behavior.” Nonetheless, the supervisor sent an e-mail to all agency employees the very next day, telling them to “feel free” to contact the rapist and “give him some encouragement.” When Fuller asked for paid administrative leave to deal with problems caused by the rape, she was told that her case was not “unusual” enough to warrant that treatment; the rapist, however, was provided paid leave.
The district court granted summary judgment to the IDOC on Fuller’s hostile work environment claim. We hold that Fuller proffered sufficient admissible evidence to avoid summary judgment, and we remand for a trial on her hostile work environment claim.[1]
FACTUAL BACKGROUND[2]
A. Rape Allegations and Cruz Investigation.
In January 2011, Cynthia Fuller began working as a probation and parole officer in the IDOC District 3 office in Caldwell, Idaho. During her first week on the job, Fuller met Herbt Cruz, a senior probation officer. Months later, they began an intimate relationship. Although IDOC policy required reporting the relationship, they kept it secret.
In late July 2011, Idaho State Police notified the IDOC that the Canyon County Sheriffs Office was investigating Cruz for the rape of “J.W.,” a civilian. On August 15, the IDOC placed Cruz on administrative leave with pay. District Manager Kim Harvey called a District 3 staff meeting, advising the employees that Cruz was on administrative leave because of a confidential, ongoing investigation and “was not authorized to be on the premises.” But, Harvey also stated that the IDOC looked forward to Cruz’s prompt return to work.
The next day, Fuller disclosed her relationship with Cruz to her supervisors, who did not reveal the nature of the ongoing investigation to her. Eventually, Fuller learned that Cruz had been accused of rape, but nonetheless continued her relationship with him.
On August 22, Cruz raped Fuller at his home. A second rape took place on August 30 or 31, and a third on September 3, both also outside the workplace.
On September 6, after the IDOC received photos of her injuries, Fuller confirmed to Harvey that Cruz had raped her. Harvey took Fuller to the Canyon County Sheriffs Office and sat in on part of her interview with detectives. Afterwards, Harvey told Fuller “that Cruz had a history of this kind of behavior and that he knew of several instances.”[3] The next day, *1159 Fuller obtained a civil protection order prohibiting Cruz from coming within 1000 feet of her.
Henry Atencio, Deputy Chief of the IDOC Probation & Parole Division, directed Harvey to maintain contact with Cruz while he was on leave, to keep him informed of the investigation’s status and “make sure he’s doing okay in terms of still being our employee.” Fuller knew about Cruz’s continued contacts with supervisors while on leave. On September 7, the day Fuller obtained the civil protection order, Harvey sent this e-mail to District 3 staff, including Fuller:
Just an update on Cruz. I talked to him. He sounds rather down, as to be expected.... Just as a reminder—and this is always one thing I hate about these things—he cannot come to the office until the investigation is complete. Nor can he talk to anyone in the Department about the investigation. So, if you want to talk to him, give him some encouragement etc., please feel free. Just don’t talk about the investigation. At this point, I honestly don’t know the status of it.
The IDOC began an internal investigation of Cruz on September 12, and on September 14 expanded the investigation to include Fuller’s allegations. IDOC investigators met with Cruz twice in September, and also interviewed Fuller. The investigation concluded in late October, with the IDOC deciding to terminate Cruz’s employment. But, waiting to see if Cruz would be criminally charged, the IDOC did not issue a Notice of Contemplated Action until December 27, nor did it apprise Fuller whether Cruz had been cleared. Cruz promptly resigned after being notified that the IDOC intended to terminate his employment.
B. The ÍDOC’s Responses to Fuller’s Report.
After Fuller reported the rapes to the Canyon County Sheriffs Office, Harvey told Atencio and Fuller’s direct supervisors about the allegations. He told the supervisors that she was taking leave and that, if other employees inquired about her absence, the agency should say that it was related to her known illness. Harvey told Fuller that he would determine whether she was eligible for paid administrative leave. On September 19, Atencio formally denied Fuller’s leave request in an e-mail, explaining that only employees under investigation are eligible for administrative leave, and advising her to use accrued vacation and sick time instead. He copied Roberta Hartz, a Human Resources (“HR”) representative, on the e-mail, despite knowing she had previously lived with Cruz.
IDOC Standard Operating Procedure (“SOP”) 206 permitted the Director to grant paid administrative leave “[w]hen a manager (or designee) deems it necessary due to an unusual situation, emergency, or critical incident that could jeopardize IDOC operations, the safety of others, or could create a liability situation for the IDOC.”[4] But, IDOC Director Brent Reinke granted paid leave under this policy only for “acts of God, nature,” because state officials had instructed him to restrict paid leave.
*1160 Fuller later received intermittent Family & Medical Leave Act leave. After her doctor certified that she was “unable to concentrate, and perform,” had “severe anxiety,” and was “unsafe to carry [a] weapon,” the IDOC placed Fuller on modified duty doing data entry.
Fuller again requested paid leave, noting that (1) Cruz was being paid during his administrative leave; (2) she had “received no guidance from the IDOC regarding any assistance ... as a victim, including” filing a sexual harassment claim; and (3) the IDOC had put other “potential victim[s]” at risk by failing to disclose to staff why Cruz was on leave and by stating that it “hopes he returns soon.” The IDOC did not respond to her letter.
Fuller met with Atencio, Harvey, and Hartz[5] on November 10, 2011, asking for reinstatement of her vacation and sick time and for paid administrative leave for the work she missed, and would continue to miss, because of the rapes. Atencio said she did not meet the SOP 206 criteria, because her situation was not “unusual.”
Fuller also described her “uncomfortable work environment” to the supervisors. Staff, unaware of why she had been absent from work, suspected that she was “faking being sick.” This ostracization occurred, she believed, “because [the staff have] been misled” about Cruz’s situation. Harvey explained that he was “not at liberty to say why [Cruz is on leave] because ... that wouldn’t be fair ... if the allegations were proven untrue,” and Cruz would have a “stigma hanging over [him].” Harvey said that at the time he told staff that he looked forward to Cruz’s prompt return to work, “the only alleged victim that [he] knew about was the gal ... that had originally come forward,” not Fuller. Fuller said Harvey’s later encouragement of staff to give Cruz “moral support,” despite knowing that she had accused him of rape, was “completely insulting.” Harvey replied that he was “trying to keep [her] out of it.”
Fuller asked that the IDOC inform District 3 employees of the civil protection order, explaining that she did not “feel safe” because Cruz could walk in to the building and no one would call the police. Atencio responded that, “as much as you find this distasteful, Cruz is still our employee. And we have to be conscious of his rights.”
On November 16, Harvey sent this message to District 3 staff:
I want to update you regarding Herbt Cruz. As you know, Herbt is on leave pending an investigation. The investigation is on-going and we hope to bring this to a resolution as soon as possible. As the investigation is currently underway, Cruz is not allowed in the D-3 offices. If you see him, please contact a supervisor.
Fuller resigned that day.
PROCEDURAL BACKGROUND
After exhausting administrative remedies, Fuller sued the IDOC, Reinke, and Atencio in the District of Idaho. After the district court granted a defense motion for partial summary judgment, four claims remained: (1) a Title VII hostile work environment claim against the IDOC; (2) a Title VII gender discrimination claim against the IDOC; (3) a 42 U.S.C. § 1983 claim alleging equal protection violations against Reinke and Atencio; and (4) an intentional or negligent infliction of emotional distress claim against Atencio.
The parties filed cross-motions for summary judgment on these four claims. The *1161 district court granted the defendants’ motion. The court rejected Fuller’s hostile work environment claim on the grounds that the rapes occurred outside the workplace and that the IDOC had taken remedial action. Fuller timely appealed.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction under 28 U.S.C. § 1291, and we review the district court’s grant of summary judgment de novo. Porter v. Cal. Dep’t of Corr., 419 F.3d 885, 891 (9th Cir. 2005). “[W]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law.” Id. (quoting Ray v. Henderson, 217 F.3d 1234, 1239-40 (9th Cir. 2000)); see also Fed. R. Civ. P. 56(a).
We recently explained in a case involving a hostile work environment claim that “what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent’s favor.” Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation marks omitted). In assessing whether a genuine issue of material fact exists for trial, we do not weigh the evidence, nor make factual or credibility determinations. Id. “[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment.” Id. (internal quotation marks omitted). And, “where application of incorrect legal standards may have influenced the district court’s conclusion, remand is appropriate.” Id. at 442.
DISCUSSION
Title VII of the Civil Rights Act of 1964 prohibits employer discrimination on the basis of sex regarding “compensation, terms, conditions, or privileges of employment.” 42 U.S.C. § 2000e-2(a)(l). The statutory prohibition extends to the creation of a hostile work environment that “is sufficiently severe or pervasive to alter the conditions of the victim’s employment.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). To prevail on a hostile work environment claim, an employee must show that her employer is liable for the conduct that created the environment. Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).
A. Hostile work environment.
A hostile work environment occurs when an employee 1) “was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was ‘sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.’ ” Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (quoting Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991)). “The working environment must both subjectively and objectively be perceived as abusive,” and the objective analysis is done “from the perspective of a reasonable” woman. Id.
In determining whether a work environment is sufficiently hostile, the court evaluates the totality of the circumstances, “including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Little, 301 F.3d at 966 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam)). While ‘“simple teasing, offhand *1162 comments, and isolated incidents (unless extremely serious)’ are not sufficient to create an actionable claim under Title VII ... the harassment need not be so severe as to cause diagnosed psychological injury.” Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 687 (9th Cir. 2017) (alteration omitted) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). “It is' enough ‘if such hostile conduct pollutes the victim’s workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position.’ ” Id. (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994)).
Fuller argues that the IDOC’s reactions to the rapes—effectively punishing her for taking time off, while both vocally and financially supporting her rapist—created a hostile work environment. The issue is whether an objective, reasonable woman would find “her work environment had been altered” because the employer “condoned” the rape “and its effects.” Little, 301 F.3d at 967-68.[6] Viewing the facts in the light most favorable to Fuller, we hold that Fuller has raised triable issues of fact as to the existence of a hostile work environment.[7]
When Fuller reported her rapes, Harvey told her “that Cruz had a history of this kind of behavior” and “he knew of several instances” of misconduct by Cruz. But, nonetheless, Harvey almost immediately thereafter told District 3 staff to “feel free” to “give [Cruz] some encouragement” and that he “hate[d]” that Cruz “cannot come to the office until the investigation is complete.” This e-mail came on the heels of Harvey’s previous statement to staff that he looked forward to Cruz returning quickly. Fuller was privy to both of those announcements, in which her supervisor publicly supported an employee whom he knew was accused of raping two women and sexually harassing several others.[8]
Fuller was aware that IDOC supervisors were communicating with Cruz, offering him support dining his suspension. And, although Fuller was interviewed by IDOC investigators in September, and the agency had concluded by late October that he should be terminated, no disciplinary action was taken until after Fuller resigned. As far as Fuller knew, Cruz might return to work any day.
When Fuller raised concerns about her safety should Cruz return to the workplace, Harvey and Atencio emphasized that Cruz was “still our employee,” and that they did not want a “stigma hanging over” him in the event “the allegations were proven untrue.” Therefore, she reasonably could have suspected that the IDOC had exonerated Cruz, and that he would soon return to work.
In light of the severity of the sexual assaults on Fuller, documented by the photographs seen by the IDOC supervisors, a reasonable juror could find that the agency’s public and internal endorsements of *1163 Cruz “ma[de] it more difficult for [Fuller] to do her job, to take pride in her work,. and to desire to stay in her position.” Reynaga, 847 F.3d at 687 (quoting Steiner, 25 F.3d at 1463). A reasonable woman in Fuller’s circumstances could perceive the repeated statements of concern for Cruz’s well-being by supervisors as evincing their belief that Fuller was lying or, perhaps worse, as valuing Cruz’s reputation and job over her safety. This conclusion is reinforced by the fact that Harvey and Atencio held important supervisory positions. See Zetwick, 850 F.3d at 445 (emphasizing “the potentially greater impact of harassment from a supervisor”).
The repeated endorsements of Cruz were not “simple teasing, offhand comments, and isolated incidents,” or ordinary workplace interactions. Faragher, 524 U.S. at 788, 118 S.Ct. 2275 (citation and internal quotation marks omitted). The decision to publicly support an employee accused of raping another employee was “humiliating” and potentially “physically threatening” to Fuller, not “a mere offensive utterance.” Id. at 787-88, 118 S.Ct. 2275. A reasonable juror could credit Fuller’s statements that Harvey’s e-mail was “completely insulting” to her, and that she felt the IDOC had given no “assistance for [her] as a victim” of a rápe which “impaired [her] ability to live normal, sleep normal, or feel safe.” These facts raise a genuine dispute as to whether the work environment was “sufficiently hostile” to violate Title VII. Little, 301 F.3d at 966.
Other evidence, while perhaps not sufficient by itself to support Fuller’s Title VII claim, supports the conclusion that a reasonable woman could perceive a hostile work environment at the IDOC.[9] Atencio denied Fuller’s request for paid administrative leave to recover from her rapes in an e-mail in which he copied Hartz, who was not the assigned HR representative, despite knowing that Hartz had a previous romantic relationship with Cruz. Fuller produced evidence that she was “forced to return to work against” her therapist’s and doctor’s recommendations, while her rapist was granted paid administrative leave. Fuller also expressed concern about her co-workers’ hostility toward her for missing work, blaming Harvey’s e-mail, which failed to divulge why Cruz was on. leave.
“While each of these incidents may not in itself be sufficient to support a hostile work environment claim, their cumulative effect is sufficient to raise material issues of fact as to whether the conduct was so severe or pervasive to alter the conditions of the workplace.” Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189, 1207 (9th Cir. 2016), cert. denied, — U.S. —, 137 S.Ct. 623, 196 L.Ed.2d 515 (2017); see also Zetwick, 850 F.3d at 444 (requiring consideration of “the cumulative effect of the conduct at issue to determine whether it was sufficiently ‘severe or pervasive’ ”). The defendants do not contest that these actions occurred. Rather, they disagree with Fuller’s interpretation of events, arguing that the IDOC was supportive of Fuller after the rapes. But, at the summary judgment stage, we ask only whether “a reasonable juror drawing all inferences in favor of [Fuller] could return a verdict in [her] favor;” we do not “weigh the evidence” or resolve whether the employer’s actions were more supportive than discriminatory. Zetwick, 850 F.3d at 441 (internal quotation marks omitted).
*1164 The IDOC’s actions were less drastic than those of the employer in Little, who advised the plaintiff to drop her rape complaint, and when she did not, reduced her pay and fired her. 301 F.3d at 964-65. But, a reasonable juror could nonetheless conclude that the IDOC “effectively condoned” the rapes.[10] Id. at 967-68. Fuller was forced to return, before she had recovered from her rapes, to a workplace run by supervisors who showed public support for her rapist, eagerly anticipated his return, and continued to pay him while denying her paid leave. In contrast, the employer in Brooks removed the alleged harasser from the workplace “as soon as his misdeeds”—an isolated instance of fondling which the court found not “severe”—were discovered and took no actions which could be perceived as supportive of the harasser or indicative that he might return. 229 F.3d at 921-22, 924, 926. Like the victim in Little, Fuller “was victimized by three violent rapes,” and a reasonable juror could find that her employer thereafter reacted in ways that “allowed the effects of the rape[s] to permeate [her] work environment and alter it irrevocably.” 301 F.3d at 967.
A finder of fact may ultimately conclude, as does our dissenting colleague, that the IDOC acted reasonably when confronted with a difficult situation. Today we conclude only that, viewing the evidence in the light most favorable to Fuller, a reasonable trier of fact could also find that the IDOC’s actions were sufficiently severe or pervasive to create a hostile work environment.[11]
B.. Employer liability.
“An employer may be held liable for creating a hostile work environment either vicariously (i.e., through the acts of a supervisor) or through negligence (i.e., failing to correct or prevent discriminatory conduct by an employee).” Reynaga, 847 F.3d at 688. Fuller argues that the IDOC is vicariously liable for the hostile work environment created by its supervisors’ responses to her rapes. The IDOC does not dispute that Harvey, Atencio, and Reinke were “supervisors.” See id. at 689 (defining supervisor as “a person who can take tangible employment actions against an employee”). Nor does the IDOC dispute that the supervisors’ actions here were within the scope of their employment.[12] See *1165 Faragher, 524 U.S. at 807-08, 118 S.Ct. 2275. Thus, if a jury finds that the IDOC supervisors created a hostile work environment, the IDOC would also be liable.
C. The Dissent.
The dissent is flawed in two important respects. First, it ignores that, in reviewing the grant of summary judgment, we must take all the facts and reasonable inferences in favor of Fuller. Second, in concluding that Fuller did not suffer discrimination “because of sex,” the dissent takes an improperly narrow view of the inferences that can reasonably be drawn from the facts actually in the record.
(1) Improper summary judgment analysis.
The dissent criticizes us for drawing all inferences from the evidence in the light most favorable to Fuller. Dissent at 1168-69. But, that is precisely our judicial duty at the summary judgment stage. “Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The dissent repeatedly ignores this directive. For example, it claims to accept Fuller’s sworn testimony that Cruz raped her, but then emphasizes that “Cruz has never been charged or convicted” of the rapes and highlights that the relationship with Cruz was once consensual. Dissent at 1169-70 & n.4. Similarly, the dissent purports that “the IDOC investigated and addressed each of’ the prior sexual harassment incidents involving Cruz adequately, when in fact the record evidence on this point is far from undisputed. Compare Dissent at 1170-71 & n.6 (deeming evidence as “unsubstantiated complaints”) with Atencio Deposition, at 36, Harvey Deposition at 52 (Atencio expressing concern about Cruz’s behavior and asking Harvey to “keep an eye on him,” but taking'no disciplinary action or making “any sort of report” of the allegations), Harvey Deposition at 239 (Harvey testifying that Atencio never directed him to “make any report to HR or [the Office of Professional Standards]” (OPS) about Davila and McCurry’s allegations against Cruz and that he was not aware of “any informal or formal discipline that Cruz received as a result of the events”), OPS Supplemental Investigation Report at 2 (Davila and McCurry’s supervisor “felt both incidents were inappropriate” and “was not aware of any disciplinary action taken against Cruz for these incidents”). Other improper factual and credibility determinations abound. See, e.g., Dissent at 1169-70 & n.3 (acknowledging Cruz “received supportive phone calls ... even from IDOC supervisors,” but concluding that Fuller could not possibly perceive such conversations as evincing support for Cruz because they occurred only “on a couple of occasions”), 1169 & n.9 (emphasizing that Fuller was forced to return to work only by “her own assessment of her financial situation,” but discounting evidence that Fuller felt she was treated poorly as a rape victim), 1172 n.13 (dismissing Fuller’s belief “that the IDOC had exonerated Cruz” as merely “second-hand gossip”), 1172 (highlighting that “Fuller surreptitiously recorded” the meeting with IDOC supervisors).
In concluding that the IDOC’s denial of administrative leave could not have contributed to a hostile work environment because it was not itself discriminatory, the dissent ignores undisputed record evidence about what the IDOC actually told Full *1166 er—that her situation was not “unusual” enough to warrant paid leave, although her male rapist was entitled to such leave and his colleagues’ support. See Dissent at 1171 n.9, 1172 n.12, 1173 n.15, 1176 n.17. And indeed, perhaps most tellingly, the dissent brushes over and deemphasizes the critical lines from Harvey’s comments about Cruz, both in the initial staff meeting and in the later email to the staff, sent after Fuller reported her rapes. See Dissent at 1169 (describing Harvey’s comment that the IDOC “looked forward to [Cruz’s] coming back very soon” as made “in passing”), 1171 (discounting lines “if you want to talk to him, give him some encouragement, etc., please feel free” and “[j]ust as a reminder—and this is always one thing I hate about these things—he cannot come to the office until the investigation is complete”) (emphasis added). Yet, as the dissent correctly notes, “we cannot ignore undisputed evidence simply because it is unhelpful to” our own view of the merits. Dissent at 1169.
At trial, a jury might conclude, as the dissent does, that the IDOC’s conduct was “proper.” Dissent at 1178. But, we “must adopt the inference that is most favorable to the nonmoving party,” rather than “weigh the merit of [competing] inferences.” Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1123-24 (9th Cir. 2009). That the dissent can point to some irrelevant evidence as “undisputed” does not deem the inference from other evidence that Fuller was discriminated against because of her sex to be not “rational or reasonable.” Dissent at 1168.
(2) Incorrect “because of sex” analysis.
The dissent also contends that Fuller presented no evidence that she was discriminated against “because of’ her sex. Dissent at 1175-79. However, that argument, which the IDOC did not raise, misreads the precedent.
A Title VII plaintiff must prove discrimination “because of ... sex.” 42 U.S.C.. § 2000e-2(a)(l). “The critical issue, Title VII’s text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.” Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal quotation marks omitted). The Supreme Court has emphasized that a plaintiff is not confined to a specific “evidentiary route” to meet this requirement. Id. at 81, 118 S.Ct. 998. Although the dissent correctly notes potential evidentiary routes that Fuller could have followed to raise a triable issue of fact as to discrimination because of her sex, Dissent at 1175, her claim does not fail merely for following a different route than the ones the dissent favors. See Oncale, 523 U.S. at 80-81, 118 S.Ct. 998 (explaining that “[w]hátever evidentiary route the plaintiff chooses to follow,” they must prove discrimination because of sex); EEOC v. Nat’l Educ. Ass’n, 422 F.3d 840, 844-45 (9th Cir. 2005) (finding discrimination “because of ... sex” where “primarily women were the targets” of employer’s conduct).
In Little, we held that “[b]eing raped is, at minimum, an act of discrimination based on sex. Thus, the employer’s reaction to a' single serious episode may form the basis for a hostile work environment claim.” 301 F.3d at 967-68 (citation omitted). The dissent correctly notes that the rape in Little occurred in the workplace, while the rapes of Fuller did not. Dissent at 1176-77. But, Little directly responds to the dissent’s legal argument that any disparate treatment of a rape victim who was not assaulted in the workplace cannot be because of sex. Little teaches that when an employer acts in a *1167 way that “effectively condonéis]” or ratifies a rape or sexual assault and its effects, a jury may reasonably infer that the -employer itself is discriminating “because of sex.” 301 F.3d at 968.
Indeed, “Little [did] not seek relief based on imputed liability for the rape. Rather, her claim [was] about whether [her employer’s] reaction to the rape created a hostile work environment.” Id. at 966. And, while Little’s rape occurred in the workplace, we found “more significant! ]” the fact that the employer’s “subsequent actions reinforced rather than remediated the harassment.” Id. at 967. Thus, we held that a question of material fact arose as to whether the employer’s actions created a sexually hostile work environment because it “allowed the effects of the rape to permeate Little’s work environment and alter it ‘irrevocably.” Id.
Thus, contrary to the dissent’s assertion, Little did not confine its holding to an employer’s response to rapes that themselves “qualify as workplace conduct.” Dissent at .1177. Nor would such a holding make sense: if an employer, acting in the workplace, discriminates against a female rape victim in the conditions of her employment by condoning her rape and its effects, that employer should not escape Title VII liability for its discrimination merely because a rapist employee conducted his assault off the premises. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that Title VII “evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment” (internal quotation marks omitted)). Although we decline to opine on whether other circumstances may constitute “condoning or ratifying” a rape, we find that Fuller has raised a question of material fact as to whether the IDOC did so here. And, contrary to the dissent’s assertion, we are aware of no case requiring proof of a tangible adverse employment action— such as silencing an employee’s complaint, cutting her pay, or firing her—in a hostile work environment claim, let alone in one based on an employer’s reaction to a rape. Compare Dissent at 1177-78 with Meritor, 477 U.S. at 64, 106 S.Ct. 2399 (holding that a hostile work environment violates Title VII because “the language of Title VII is not limited to ‘economic’ or ‘tangible’ discrimination”).[13]
Furthermore, an inference of discrimination because of sex is even more reasonable where, as here, the record also contains evidence of Fuller’s male supervisors’ solicitous treatment of the man whom they knew may have raped Fuller and their less solicitous treatment of the woman who reported the rape. When “[t]he record reveals at least a debatable question as to the objective differences in treatment of male and female employees, and strongly suggests that differences in subjective effects were very different,” summary judgment is inappropriate. EEOC, 422 F.3d at 845-46.
To the extent that the dissent argues that the record does not permit the inference that the IDOC’s treatment of Fuller would have been any better had Fuller been a man, or that any such inference would be based on “overbroad gener- *1168 alizations” based on gender, see Dissent at 1178 n.20, it ignores reality. We must view the evidence in light of “the different perspectives of men and women.” Ellison, 924 F.2d at 878. “[W]omen are disproportionately victims of rape and sexual assault,” and, accordingly, “women have a stronger incentive to be concerned with sexual behavior. ... Men, who are rarely victims of sexual assault, may view sexual conduct in a vacuum without a full appreciation of the social setting or the underlying threat of violence that a woman may perceive.” Id. (footnote omitted). Therefore, a jury armed with “[cjommon sense, and an appropriate sensitivity to social context” could reasonably conclude that the actions of Fuller’s supervisor—siding with Cruz, her alleged rapist, over her—were because of her sex. Oncale, 523 U.S. at 82, 118 S.Ct. 998. It is up to a jury, not us, to decide whether that plausible inference is the best one to draw from this record.
CONCLUSION
We vacate the summary judgment in favor of the IDOC and remand for a trial on Fuller’s Title VII hostile work environment claim. Costs on appeal are‘awarded to Plaintiff-Appellant.

. We have affirmed the district court’s summary judgment to the IDOC on Fuller’s other claims in a memorandum disposition issued today.

. We view the evidence in the light most . favorable to Fuller, the party opposing summary judgment. JL Beverage Co. v. Jim Beam Brands Co., 828 F.3d 1098, 1105 (9th Cir. 2016).

.Prior to the rape of Fuller, the IDOC had received complaints from three female employees about inappropriate behavior by Cruz. One of the employees filed a suit against the IDOC in 2006, ■ alleging sexual harassment by Cruz. Cruz was not disciplined in connection with any of these events, although in 2010, the IDOC decided not to transfer him to a district office in which two of the complainants worked, after they objected. Harvey then was asked by Henry Atencio, *1159 his supervisor, to tell Cruz that “that behavior won’t be tolerated,” and to "keep an eye on him.”

. SOP 206 also permits the director to grant paid administrative leave “[w]hen the employee is being investigated” and "[w]hen the employee is in the due process procedure of a disciplinary action.” Cruz received paid leave under these provisions.

. Fuller was uncomfortable with Hartz’s presence at the meeting because of Hartz's previous relationship with Cruz, and Hartz’s failure to discipline another IDOC employee whom Fuller had previously accused of inappropriately touching her.

. It is undisputed that Fuller subjectively perceived her work environment as hostile.

. Fuller also alleged that the rapes created a hostile work environment. We affirm the district court’s grant of summary judgment to the defendants as to that claim in the memorandum disposition filed today.

. The IDOC’s knowledge of previous sexual harassment complaints against Cruz, "while alone insufficient to create a hostile work environment, “is relevant and probative of [the IDOC’s] general attitude of disrespect toward [its] female employees.” Zetwick, 850 F.3d at 445 (quoting Heyne v. Caruso, 69 F.3d 1475, 1479-81 (9th Cir. 1995)). Because Fuller learned after she was raped that the IDOC was aware of Cruz’s "history of this kind of behavior,” she reasonably could have believed that the IDOC would continue to support Cruz at the expense of its female employees.

. As we note in the memorandum disposition discussing Fuller's other claims, the denial of her paid leave request does not itself violate Title VII. Co-worker ostracism alone is also insufficient to violate the statute. See Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000). However, these facts are part of "the totality of the circumstances” that we must consider in evaluating whether a reasonable woman- would perceive her workplace environment as hostile. See Zetwick, 850 F.3d at 444.

. It is not necessary that the IDOC either intended to discriminate or knew that its conduct created a hostile work environment. Reynaga, 847 F.3d at 687 (explaining that “hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim”); EEOC v. Nat’l Educ. Ass'n, 422 F.3d 840, 844-45 (9th Cir. 2005) (concluding that harassers need not intend to discriminate).

. The dissent claims that we are condemning "the IDOC’s refusal to denigrate Cruz merely because he was accused of wrongdoing.” Dissent at 1178. Incorrect. We hold only that a reasonable juror could find that the IDOC's decision to support Cruz, both pub-lically and internally, after Fuller reported that he raped her, contributed to a hostile work environment—whether or not the IDOC reasonably decided not to disclose the sealed protective order or publicize the allegations against Cruz before they were proven.

.The IDOC argues that Fuller must demonstrate negligence by the agency, rather than seek to impose vicarious liability for the actions and omissions of its supervisory employees. But, the cases it cites involve harassment by co-workers or non-employees, not the creation of a hostile work environment by supervisors. See Little, 301 F.3d at 968 (discussing when "employers are liable for harassing conduct by non-employees”); Ellison, 924 F.2d at 881-82 (setting forth liability standard "for sexual harassment by co-workers” and explicitly distinguishing "employer liability for a hostile environment created by a supervisor”); Brooks, 229 F.3d at 924 (analyzing whether employer can be liable for "an isolated incident of harassment by a co-worker”). We recently emphasized the distinction be *1165 tween these two forms of liability in Reynaga, 847 F.3d at 688-89.

. The' dissent concedes that an employer’s actions undertaken "because of a rape (whether in or outside of the workplace) might give rise to a reasonable inference of discrimination because of sex.” Dissent at 1177. We agree. But, an equally reasonable inference of discrimination because of sex surely also alises when an employer, knowing that a female employee was sexually assaulted by a male coworker, nonetheless tells its employees that it looks forward to the rapist’s return to work and encourages them to contact him with messages of support.